**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Athena Magdalene, | No. CV-19-04772-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Athena Magdalene's Applications for Child Insurance and Supplemental Security Income benefits by the Social Security Administration (SSA) under the Social Security Act. Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 19, Pl. Br.), Defendant Social Security Administration Commissioner's Response Brief (Doc. 20, Def. Br.), and Plaintiff's Reply Brief (Doc. 25, Reply). The Court has reviewed the briefs and Administrative Record (Doc. 12, R.) and now affirms the Administrative Law Judge's decision (R. at 18–45.) as upheld by the Appeals Council (R. at 1–4.)

**I.   BACKGROUND**

Plaintiff filed Applications for Child Insurance and Supplemental Security Income Benefits on November 25, 2013, for a period of disability beginning on January 1, 2014 (amended). (R. at 18, 20, 153, 571, 594.) Her claim was denied initially on March 27, 2017,

but was reversed and remanded by the Appeals Council on September 25, 2017. (R. at 245–73.) Plaintiff appeared before the ALJ for a hearing regarding her claim, which was denied on December 5, 2018. (R. at 1, 15–45.) On May 20, 2019, the Appeals Council denied Plaintiff's Request for Review and adopted the ALJ's decision as the agency's final decision. (R. at 1.)

The Court has reviewed the medical evidence in its entirety and will discuss the pertinent medical evidence in addressing the issues raised by the parties. Upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the following severe impairments: borderline intellectual functioning, anxiety, and posttraumatic stress disorder (PTSD). (R. at 23.)

Ultimately, the ALJ evaluated the medical evidence and testimony and concluded that Plaintiff was not disabled from the alleged disability onset-date through the date of the decision. (R. at 45.) The ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. at 23–24.) Next, the ALJ calculated Plaintiff's residual functional capacity ("RFC"):

> [Plaintiff] has the [RFC] to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can perform simple, routine, repetitive tasks, but not at a production rate pace (e.g., assembly line); she can interact frequently with supervisors and coworkers, and occasionally with the general public; the [Plaintiff] is unable to make complex work-related decisions, but can frequently make simple work-related decisions; she can use judgment in making simple work-related decisions; and she can deal with changes for simple work-related decisions.

(*Id.* at 27.) Accordingly, the ALJ found that Plaintiff can perform jobs that exist in significant numbers in the national economy. (R. at 44.)

**II.   LEGAL STANDARD**

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability

determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

   To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

## III. ANALYSIS

Plaintiff raises two arguments for the Court's consideration.[1] (Pl. Br. at 15–29.) First, Plaintiff argues the ALJ incorrectly evaluated medical opinions in determining Plaintiff's RFC. (Pl. Br. at 1–2.) Second, Plaintiff argues the ALJ erred by rejecting Plaintiff's symptom testimony without specific, clear, and convincing reasons supported by substantial evidence. (Pl. Br. at 2.) The Court rejects Plaintiff's arguments for the following reasons.

### A. The ALJ provided specific and legitimate reasons supported by substantial evidence in evaluating medical opinions.

Plaintiff underwent a consultative psychological evaluation in April 2014 with Amanda Nellis, Ph.D., LPC. (R. at 30, 1235–45.) The ALJ gave little weight to Dr. Nellis's opinion that Plaintiff would have difficulty understanding and remembering simple sets of instructions but determined Dr. Nellis's opinions were generally consistent with other objective medical evidence and the evidence presented in the record. (R. at 41.) The ALJ gave little weight to this specific opinion because Plaintiff was able to engage in "significant, if not substantial, work activity bagging groceries in 2018, which required her to understand, remember, follow, and carry out simple instructions." (R. at 40–41.) Plaintiff underwent another consultative psychological evaluation in June 2018 with An Nguyen, Psy. D. (R. at 42, 2259–65.) The ALJ gave great weight to Dr. Nguyen's opinion because he "personally examined [Plaintiff] and his opinions are generally consistent with his own objective findings and the other objective medical evidence on the record." (R. at 42.)

---

[1] Plaintiff originally raised three issues. The third issue was that the ALJ failed to consider Plaintiff's limitations in concentration, persistence, and pace by finding that Plaintiff could perform simple, routine, and repetitive tasks. (Pl. Br. at 2, 27–29; Reply at 6.) In Plaintiff's Reply Brief, she indicates the third issue was disposed of in *Merrill-Russell v. Comm'r of Soc. Sec.*, 411 F. Supp. 3d 503, 509–10 (D. Ariz. 2020). (Reply at 6.) In *Merrill-Russell*, the plaintiff argued that the ALJ erred in formulating the RFC because he did not articulate whether plaintiff was able to sustain those tasks. *Id.* at 509. This Court found the ALJ "sufficiently accounted for Plaintiff's limitations in concentration, persistence, and pace by limiting her RFC to 'simple, routine work.'" *Id.* at 510. We agree with Plaintiff this reasoning applies here. The third issue is disposed of and requires no discussion.

These findings are supported by medical evidence and the Plaintiff's own actions and statements.

An ALJ "may only reject a treating or examining physician's uncontradicted medical opinion based on 'clear and convincing reasons.'" *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing *Lester v. Chater*, 81 F. 3d 821, 830–31 (9th Cir. 1996)). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* An ALJ meets this standard by "setting out a detailed and thorough summary of the facts and conflicting medical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Here, the facts and conflicting medical evidence support the ALJ's decision to discount Dr. Nellis's opinion that Plaintiff would have difficulty with simple instructions. First, even Dr. Nellis observed that when Plaintiff had difficulty, she was able to persist and complete tasks. (R. at 31, 1241.) Dr. Nellis noted that Plaintiff declined to take breaks when offered, as well. (R. at 31, 1214.) Additionally, Plaintiff stated that she did not have difficulty remembering what to do when she worked bagging groceries. (R. at 171–72.) When Plaintiff worked bagging groceries, she showed she had the ability to understand, remember, follow, and carry out simple instructions. (R. at 39–40, 2472–2536.) In a January 2014 evaluation, Plaintiff had no difficulty comprehending evaluation instructions and written instructions and was able to follow through on what the instructions said to do. (R. at 28–29, 40–41, 1218, 1221–22.) The ALJ may properly rely on evidence of a plaintiff's activities to discount a doctor's opinion about the plaintiff's ability to perform simple work. *See Garrison v. Colvin*, 759 F. 3d 995, 1012 (9th Cir. 2014). Plaintiff also suggests that the ALJ cannot pick and choose which medical opinions to accept or reject, but the ALJ does not need to agree with everything an expert witness says in determining weight of expert testimony. (Pl. Br. at 18–19.) *See Magallanes*, 881 F.2d at 753. Here, the ALJ did not pick and choose. Instead, he gave little weight because one specific part of Dr. Nellis's medical opinion was not supported by the evidence.

Plaintiff also asserts that the ALJ erred by not providing a specific basis for finding Plaintiff was capable of sustaining activities required for work. (Pl. Br. at 19.) Significantly, the ALJ found Plaintiff was "able to engage in significant, if not substantial, work activity bagging groceries in 2018," which was supported by evidence in the record. (R. at 41, 2472–2536.) Plaintiff worked at a good pace, stayed on task, carried out simple instructions, and worked well with coworkers and supervisors. (R. at 36–41, 2472–2536.) Plaintiff also stated that she did not have difficulty remembering or performing instructions for job duties. (R. at 171–72.) Plaintiff even said that she enjoyed when work was busy because she liked being active. (R. at 36, 2516.) There was sufficient evidence to show Plaintiff is capable of working.

Plaintiff contends the ALJ discounted Dr. Nellis's opinion because she only met with Plaintiff one time. (Pl. Br. at 18–19.) The ALJ does not indicate this was a determinative factor in assessing Dr. Nellis's opinions and offers other reasons to give only partial weight to Dr. Nellis's opinions. (R. at 40–42.)

Next, Plaintiff argues that the ALJ erred by according great weight to the second agency consultative examiner, Dr. Nguyen. (Pl. Br. at 16; R. at 42, 2259–65.) Dr. Nguyen found that Plaintiff had no difficulty in understanding simple instructions or making decisions about simple work-related activities. (R. at 42, 2264–65.) He found that Plaintiff would likely have difficulty with complex instructions and work decisions and that she would have moderate difficulty interacting appropriately with other people. (R. at 42, 2264–65.) Here, the ALJ's RFC finding properly incorporated Dr. Nguyen's findings regarding his assessments of Plaintiff's ability to understand and follow through on instructions and ability to interact with other people. Plaintiff argues the ALJ did not give significant weight to the functional limitations Dr. Nguyen articulated, but the RFC finding did account for Dr. Nguyen's functional limitations. (Pl. Br. at 17; R. at 27, 2264.) Dr. Nguyen found that Plaintiff was able to complete daily living activities independently, manage her finances, drive, and complete chores. (R. at 42, 2264.) Dr. Nguyen opined that Plaintiff would have no difficulty understanding simple instructions and making judgments

on simple work-related tasks; Plaintiff has moderate difficulty with complex instructions and work-related decisions; and Plaintiff has moderate difficulty interacting appropriately with coworkers, supervisors, and the public. (R. at 42, 2264–65.) The ALJ reasonably found that these findings show that Plaintiff is capable of performing simple, routine tasks but not at a production rate pace; she can use her judgment to make work related decisions; and she can adapt to simple changes for work related decisions. (R. at 42.) In determining the RFC, the ALJ must assess medical evidence and the Plaintiff's descriptions of her limitations. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a). This is precisely what the ALJ did here in evaluating Dr. Nguyen's opinions.

### B.  The ALJ did not err in rejecting Plaintiff's symptom testimony.

Plaintiff contends the ALJ erred in rejecting her symptom testimony. (Pl. Br. at 2.) An ALJ performs a two-step analysis to evaluate a claimant's testimony regarding pain and symptoms. *Garrison*, 759 F.3d at 1014. First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*) (internal quotation marks omitted)). Second, absent evidence of malingering, an ALJ may only discount a claimant's allegations for reasons that are "specific, clear and convincing" and supported by substantial evidence. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012).

"[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). General findings are insufficient. *Id.* "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the Court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). "[T]he ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct." *Molina*, 674 F.3d at 1112. For instance,

the ALJ may consider "'whether the claimant engages in daily activities inconsistent with the alleged symptoms.'" *Id.* (quoting *Lingenfelter*, 504 F.3d at 1040). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment," *id.* at 1113, or where they suggest that "later claims about the severity of [the] limitations were exaggerated," *Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009). Additionally, the ALJ may consider "whether the claimant takes medication or undergoes other treatment for the symptoms." *Lingenfelter*, 504 F.3d at 1040; *see* 20 C.F.R. § 404.1529(c)(3). "Impairments that can be controlled effectively with medication are not disabling." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Finally, "[a]lthough [a] lack of medical evidence cannot form the sole basis for discounting pain [or symptom] testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

Here, the ALJ found "that [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. at 28.) In support of this conclusion, the ALJ makes numerous references to specific evidence, including medical evidence, Plaintiff's activities of daily living (ADLs), and statements made by Plaintiff.

The ALJ appropriately relied on medical evidence that did not corroborate Plaintiff's allegations in order to discount her testimony. Though this could not be—and was not—the ALJ's sole consideration, it was a permissible one. Here, the medical evidence demonstrates the existence of Plaintiff's impairments but does not support the existence of symptoms to the extent Plaintiff claims. Significantly, Plaintiff repeatedly had only mild-to-moderate symptoms during the relevant period. (R. at 27, 39–40.) Providers often reported Plaintiff was calm, polite, pleasant, euthymic, and cooperative and that her mood was normal. (R. at 28–39, 1235, 1254, 1256, 1290, 1296, 1302, 1310, 1319–20,

1372, 1438, 1464, 1483, 1486, 1497, 1509, 1518–23, 1557, 1763, 1766, 1770, 1773, 1780, 1786, 1805, 1891, 1897, 1903, 1906, 1908, 1911, 1913, 1997, 2040, 2254, 2421, 2457.) Providers also documented Plaintiff's cognitive function indicated she had normal memory, normal concentration, and logical thought processes. (R. at 28–39, 1221–22, 2251, 2257, 2417, 2425, 2434, 2437, 2445, 2455.) Dr. Nellis noted that Plaintiff was cooperative and put forth a good effort and that Plaintiff was offered several breaks but declined. (R. at 31.) Dr. Nguyen noted that Plaintiff's thought processes were logical and goal oriented, she worked at an average pace, and she appeared to understand directions. (R. at 38.) State agency psychologists David Yandell, Ph.D., and Jon Etienne Mourot, Ph.D., concluded that Plaintiff was able to remember simple instructions and could complete simple job tasks and moderate limitations with detailed instructions. (R. at 39, 193–95, 224–26.) They opined that Plaintiff would have moderate limitations adapting to changes in the workplace. (R. at 40.) The ALJ properly relied on medical evidence to discount Plaintiff's testimony.

The ALJ also properly relied on Plaintiff's ADLs in rejecting her testimony. The evidence supports the ALJ's conclusion that her ADLs are only minimally limited. Plaintiff is able to take care of herself, drive, manage her finances, shop in stores, prepare simple meals, and attend doctor appointments. (R. at 29, 30, 37–38, 1238, 2260, 2399.) The ALJ found Plaintiff is capable of frequent interaction with supervisors and coworkers. (R. at 40.) When working at Saint Mary's Food Bank, Plaintiff worked well with peers and the public, despite Plaintiff's statements that she is scared to go out in public and she had difficulty dealing with people and customers. (R. at 36, 166, 168–69.) In March 2018, Plaintiff reported she had no problem working at a fast pace and was feeling more comfortable communicating with coworkers. (R. at 37, 2512.) Plaintiff points out that the ALJ rejected her symptom testimony because at various times she was not taking psychiatric medication, but she was not taking the medication because she was pregnant or nursing at the time. (Pl. Br. at 24–25.) However, the ALJ correctly notes throughout that Plaintiff's symptoms appeared moderate regardless of whether she was on medication. (R. at 43.)

The ALJ also properly considered Plaintiff's statements regarding working and her past work experience. In April 2014, Plaintiff reported that she was not interested in working or in pursuing an education. (R. at 30, 1547.) Plaintiff reported she was interested in getting a new job in October 2014. (R. at 32, 1371.) In April 2015, Plaintiff stated she did not want to look for work because she was trying to get social security, but she would be interested in going to school sometime. (R. at 32, 1281.) While working at Saint Mary's Food Bank in February 2018, Plaintiff stated that she like when things were busy at work because she liked to be active. (R. at 36, 2516.) In March 2018, Plaintiff reported being employed through the Marc Center bagging groceries at Bashas. (R. at 37, 2317.) She reported that she wanted to obtain her GED and continue socializing with coworkers and customers while working. (R. at 37, 2317.) She continued to work at a good pace and socialized with others well in April 2018. (R. at 37, 2488.) In May 2018, Plaintiff was working at Bashas and reportedly enjoying it, though she had some back pain. (R. at 39, 2309, 2311.) Plaintiff informed other staff that once her social security gets approved, she will no longer be working. (R. at 39, 2462, 2466–67, 2470.) Plaintiff repeated this statement in June 2018 and said, "I don't want to work anyways, it makes me stay in a bad mood." (R. at 39, 2463.) Plaintiff points out that though she indicated she wanted to go back to work and school various times, that does not mean she has the ability to work and cites *Cox v. Califano*, 587 F.2d 988, 991 (9th Cir. 1978). (Pl. Br. at 25.) However, Plaintiff not only expressed a desire to go back to work and school, but she was engaged in work activity, indicated she enjoyed working, and had positive experiences working. (R. at 30–39, 2309, 2317, 2516.) This evidence shows Plaintiff was able to engage in work and socialize with superiors and coworkers, contrary to her claims otherwise.

Plaintiff also points out that the ALJ focused on a false statement Plaintiff made about her children being taken from her directly from the hospital in discounting her symptom testimony. (Pl. Br. at 26.) While the ALJ did note that Plaintiff stated her children were taken from her at the hospital because of her mental illness, when in reality they were taken from her later on and for other reasons, the ALJ provides significant other reasons in

rejecting the Plaintiff's symptom testimony, as previously stated. (R. at 38, 1672, 2261, 2422.)

The Court finds the above evidence cited by the ALJ undermines the statements made by Plaintiff. Though the ALJ did not always directly link each piece of cited evidence to a particular statement made by Plaintiff, the ALJ has nonetheless cited sufficient evidence in the record and statements by Plaintiff to enable this Court to reasonably discern his path and meaningfully determine that his conclusions are indeed supported by substantial evidence. Thus, the Court finds the above reasons sufficiently specific, clear, and convincing and supported by substantial evidence in the record.

## IV.   CONCLUSION

Substantial evidence supports the ALJ's nondisability determination. The ALJ provided sufficient reasons supported by substantial evidence in considering the medical opinions of Dr. Nellis and Dr. Nguyen and in rejecting Plaintiff's symptom testimony.

**IT IS THEREFORE ORDERED** affirming the December 5, 2018 decision of the Administrative Law Judge (R. at 18–45), as upheld by the Appeals Council on May 20, 2019 (R. at 1–4).

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 29th day of September, 2020.

Honorable John J. Tuchi
United States District Judge

- 11 -